LYMAN WAY AND OTHERS *v.* SAMUEL C. RAYMOND.

One who enters into possession of land under a mortgagee in possession, and who contracts, without writing, with the mortgagor, to purchase the land of him, if he can procure the entire title to it, is not liable to the mortgagor for rent, when the mortgagor fails to procure the title, and in fact suffers it to be foreclosed in favor of the mortgagee.

In such case, the contract not being in writing, any payment made towards the purchase may, after the foreclosure, be recovered back from the mortgagor in an action of general assumpsit.

And no demand is necessary before bringing the action.

INDEBITATUS ASSUMPSIT for money had and received, &c.   The cause was referred, and the referees reported, in substance, as follows.

The plaintiffs gave in evidence a receipt dated July 13, 1839, signed by the defendant, for a note against Pettibone & Munson, and containing an agreement on the part of the defendant to " return said note, or apply the same towards the Austin farm sold by him to the plaintiffs," and proved that the defendant had received the amount due on said note.

It appeared, that, in the spring of 1837, one John Austin, being in possession of a farm as mortgagee, leased the same to the plaintiffs for one year.   The defendant held a subsequent mortgage of the same farm, on which he obtained a decree of foreclosure against the mortgagor in February, 1837; and, in January or Febuary, 1838, the plaintiffs made a parol contract with the defendant to buy the farm of him, if he should succeed in obtaining a title thereto, and pay him $1,100 for the same when he obtained a title and conveyed it to them; and they were, in the mean time, to remain in possession of the farm.   But, if the defendant did not obtain the title, then the contract was to be of no effect.   John Austin was at that time dead, but this was not known to the parties.   The plaintiffs continued in possession until after they had commenced this suit,— Jan. 26, 1842.

In the summer of 1838 administration was taken on the estate of John Austin, and such proceedings were had in the court of chancery, that it was decreed by that court in June, 1841, that Raymond pay to the administrator $761.20 and cost by the first day of October, 1841, or be foreclosed, &c.   In ascertaining this amount, the master, to whom the account was referred, charged John Austin with the rent of the farm to April 1, 1838, and reported that *Raymond* took possession of the farm at that time, and interest was cast on Austin's claim from that date.

Raymond neglected to comply with the decree, and never ac-

quired any further or other title to the premises, and never conveyed or offered to convey them to the plaintiffs. Nor did the plaintiffs ever demand from Raymond the note delivered by them to him, nor the money received by him upon it.

From these facts the referees reported that they, intending to decide according to law, decided that the plaintiffs were entitled to recover the amount collected by the defendant on the note received by him.

The defendant then presented a claim against the plaintiffs for rent of the premises from April 1, 1838, to Oct. 1, 1841. It did not appear that there had ever been any contract between the plaintiffs and the defendant in relation to rent, and the defendant had never had possession of the farm, or exercised any control over it, except in making the parol contract with the plaintiffs. The administrator of Austin had demanded and received from the plaintiffs the full amount of the rent from the expiration of their term from Austin to the time they ceased their occupancy. The defendant's right to recover this claim was submitted by the referees, upon these facts, to the court.

The county court held that the defendant could not recover the rent, and rendered judgment for the plaintiff, upon the report, for the amount collected by the defendant upon the note. Exceptions by the defendant.

*D. Roberts, Jr.,* for defendant.

1. The present action cannot be sustained. The contract is executory on both sides. It contemplates a present lack of title in the defendant, but that at some future, uncertain time he might obtain title, at which time the obligation upon him to convey, and upon the plaintiffs to pay, would attach. Doubtless it must be intended that the title should be acquired in some reasonable time, or on reasonable demand. But that cannot be called an unreasonable delay, to which the plaintiffs at no time object, and especially when they are, all the time, reaping the benefit of a title by their possession. Eighteen months after the making of the contract the plaintiffs treated it as open and unbroken by making an advance payment upon it; so that it must be treated as an open contract until it is disaffirmed by the plaintiffs (if they have the power,) by

some notice to the defendant, or the defendant assents to its being rescinded. The contract continuing open, the action for money had and received does not lie. 1 Ch. Pl. 342. *Towers* v. *Barrett*, 1 T. R. 133. So, too, it must be regarded as unbroken by the defendant, and so no action would lie upon it, until he neglected or refused to make title on reasonable demand.

2. At the date of the contract Raymond was the absolute owner of the equity of redemption. In ascertaining the sum which Raymond was ordered to pay by decree of the court of chancery in June, 1841, interest was cast on Austin's claim to that date, and no account was made against the estate for rents accruing subsequent to the expiration of the lease from Austin to the plaintiffs. Raymond, then, as owner of the equity of redemption, was entitled to the possession from that time, or to the beneficial use of the premises. Under these circumstances the contract with the plaintiffs was made,—one stipulation of which was, that they "were to remain in possession of the farm." Raymond, then, is entitled to claim rents from them for the time that he was entitled to the possession.

It is not contended, that, if the plaintiffs had the possession as purchasers merely, or only by virtue of a contract of sale, the law would imply against them a contract to pay rent. But here it was in contemplation that Raymond might not acquire a full title. He had at that time a title to the possession; if he acquired thereafter a full title, then he was to convey, and the bargain was *then* to become a purchase. In *Smith* v. *Stewart*, 6 Johns. 46, the court regarded it as of consequence that "the defendant entered under a color of title, which might have been enforced in equity." Not so here; the plaintiffs took only a possession from Raymond, and it remained at his option whether he would ever transfer more. In *Bancroft et ux.* v. *Wardwell*, 13 Johns. 489, it was made a point material, " that there were no facts from which a tenancy could be inferred." But here, in addition to the conditional character of the agreement, we have the material fact that the plaintiffs were not to pay the $1100, until they received the title, and that they were to pay no *interest* in the mean time, although they had the possession. The plaintiffs, then, having entered by the sufferance and permission of the defendant, the law implies an obligation upon them to pay rent.

When the lease from Austin to the plaintiffs expired, there was no one but Raymond to claim the possession, or the rents,—administration on Austin's estate not having been granted until the summer following. If the plaintiffs afterwards paid the rent to the administrators, they did it in their own wrong; they must, at least, before claiming any benefit from this, show an express renunciation of a tenancy under Raymond. *Balls* v. *Westwood,* 2 Camp. 11. *Greeno* v. *Munson et al.,* 9 Vt. 37.

*E. B. Burton* for plaintiffs.

1. No demand by the plaintiffs, previous to the commencement of this suit, was necessary. The defendant had made no application of the avails of the note towards the purchase of the farm, and it was out of his power to do so,—the decree of foreclosure having become absolute against him. A *reasonable* time for purchasing in the title, which was all he could claim, had expired. Consequently nothing remained for him but to return the note. But he had put it out of his power to return the note, by collecting the amount due upon it, and thus converting it to his own use; a demand, then, would have been useless, and therefore not required, 1 Ch. Pl. 237. 1 Wh. Selw. 86. *Peck* v. *Barney,* 13 Vt. 93.

2. The plaintiffs were in possession under Austin, and were accountable to him, or his personal representative, for the rent; they could not deny the title of their landlord. *Balls* v. *Westwood.* 2 Camp. 11.

3. But they can, in no event, be liable to the defendant for the rent, for they were in under him in pursuance of a contract to purchase, and not to pay rent. *Vandenheuvel* v. *Storrs,* 3 Conn. 203. *Bancroft* v. *Wardwell,* 13 Johns. 489. *Smith* v. *Stewart,* 6 Johns. 46. *Hough et al.* v. *Birge,* 11 Vt. 190. *Kirtland* v. *Pounsett,* 2 Taunt. 145. *Whiting* v. *Sullivan,* 7 Mass. 107.

The opinion of the court was delivered by

REDFIELD, J. It can hardly be said that the present case involves the consideration of any new principle of law. The decision of it depends, as in a majority of cases, perhaps, upon the construction we put upon the facts, and the general principles to which we reduce them.

Way et al. *v.* Raymond.

1. We do not perceive how the defendant can now insist upon any claim against the plaintiffs for rent. Had he redeemed the premises from John Austin's mortgage, and had the plaintiffs then failed to carry their contract with the defendant into effect, the plaintiffs might, in some form, have been liable for rent, or *mesne* profits;—but when they were all the time holding under John Austin, and the defendant has wholly failed to perform his contract, so that the title to the land has thereby become absolute in John Austin, and the plaintiffs thereby subjected to the payment of rent to him, and have lost the land, it would be absurd almost to still subject them to the payment of rent to the defendant. This case is not nearly as favorable to the defendant's claim for rent, as if he had originally put the plaintiffs in possession, and they had not been liable for rent to another; and in such a case it was held that the defendant could not recover rent, where he was the occasion of the contract not being carried into effect,—nor could he, in any other form, recover an equivalent for rent, but was without a remedy for the use of the land. *Hough et al. v. Birge,* 11 Vt. 190.

2. It is objected to the plaintiffs' claim for the money collected of Pettibone & Munson, that the contract is still open; but we think that is not the case. Whenever the defendant, by his own neglect, puts it out of his power to perform the contract on his part, the plaintiffs might recover back what they had paid, or done, in furtherance of the contract. For, as this contract was not in writing, the plaintiffs could have no other remedy; and the defendant's conduct was equivalent to a formal rescinding of the contract on his part; and in such case it has been held that, even when the contract was such as to afford redress by special action, the party rescinding was liable, either in general assumpsit for what the other party had done in pursuance of the contract, or to a special action, at the election of the other party. But of late this general proposition has been somewhat doubted; but it was never doubted, that, when the special contract was so informal as not to afford a remedy, and one party rescinded, or abandoned it, the other might bring general assumpsit for what he had done under it. *Kidder v. Hunt,* 1 Pick. 328. See, also, in support of the general proposition, that the party not in fault may recover advances made in faith of a special contract, which the other party has abandoned, *Giles v.*

*Edwards,* 7 T. R. 181. But where the contract is still open, there is no remedy except upon the special contract. *Cooke* v. *Munstone,* 4 B. & P. 351. So, also, where it becomes impossible to restore the parties to their former standing. *Hunt* v. *Silk,* 5 East 449. But the proposition, so far as it applies to this case, is, I take it, undeniable.

We do not think a demand was necessary in this case before suit. It is not like the ordinary case of money collected. Here the defendant, at the time of receiving the note, promised *to apply the money, when collected,* towards the farm contract. The money was collected before this suit was brought. It became, then, at the time of collection, the same as so much money paid towards this contract; and there was no more necessity of a formal demand for the money, than if the defendant had received it in any other manner.

Judgment affirmed.